# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK M. SYLVIA, | ) | |
|     Petitioner, | ) | Civil Action No. 12-299 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| BOBBY L. MEEKS, | ) | |
|     Respondent. | ) | |

## OPINION AND ORDER[1]

Pending before the Court is a petition for a writ of habeas corpus filed by Petitioner, Derrick M. Sylvia, pursuant to 28 U.S.C. § 2241. He is challenging the disciplinary action taken against him when he was incarcerated at the Federal Correctional Institution ("FCI") McKean. As relief, he seeks an order from this Court directing that his incident report be expunged so that he may be restored the good time credit he lost as a sanction.

For the reasons set forth below, the Court will deny the petition.

### I.

**A.**     **Relevant Factual Background**

On September 22, 2011, Petitioner, who was housed in Cell No. 121 with another inmate named Dontez Hudson, was charged with violating prohibited act Code 104, Possession, Manufacture or Introduction of a Weapon. [Resp's Ex. 1, Att. C, ECF No. 10-4 at 2]. Correctional Officer A. McKinney reported:

> On 9-22-2011, at 10:35 pm, I received a drop note stating inmates in cell #121 had a homemade weapon in their cell. At 10:45pm while searching cell 121 unit CA a homemade weapon was discovered. The homemade weapon was a toothbrush filed down

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

> to a sharp point at one end. The weapon also had tape at the bottom used for a handle. The homemade weapon was 7 inches in length. The weapon was recovered under the top bunk mattress.

[Id.]

Petitioner was served with the Incident Report that same day. He told the investigating officer:

> he did not know anything about a weapon in the cell. He stated that the weapon was found on the top bunk and he lives on the bottom bunk. He indicated that he did not know anything about his cellie. However, he believes the weapon was planted in the cell. He indicated he did several years in the state system and 2 years in the federal system and he has never been in trouble.

[Id.][2] At the conclusion of the interview, the investigating officer determined that the Incident Report was "warranted and justified" and recommended that the case proceed to the next phase of the disciplinary process, which in this case was a hearing before the Discipline Hearing Officer ("DHO").

On October 15, 2011, Petitioner was provided with a copy of the form entitled "Inmate Rights at Discipline Hearing." It advised him of his right "to call witnesses (or present written statements of unavailable witnesses) and to present *documentary evidence* in [his] behalf, provided institutional safety would not be jeopardized[.]" [Resp's Ex. 1, Att. D, ECF No. 10-5 at 2 (emphasis added)]. Petitioner also received a copy of the form entitled "Notice of Hearing Before the (DHO)," which enabled him to elect to have a staff representative present at the hearing and to call witnesses. On that form, Petitioner elected

---

[2] The investigating officer noted that Petitioner "requested a video review be conducted on his cell door from 4:00 pm to 10:00 pm to see if any inmate other than he or his cellie entered his cell." [Resp's Ex. 1, Att. C, ECF No. 10-4 at 3]. On January 11, 2012, Petitioner requested that he receive "a copy of the visual recordings from the surveillance camera located in Unit CA from 11:00 AM to 10:00 PM on Thursday, September 22, 2011 and/or prints and/or written descriptions with chronology of events as to the activity at the entrance of cell #121 in Unit CA." His request was denied on that same day because: "Per the Captain, you are not authorized to have those items." [Pet's Ex. C, ECF No. 4-1 at 10]. Petitioner filed an administrative appeal of that decision on January 24, 2012, in which he contended that his due process rights were violated because his request had been denied. The FCI McKean Administrative Remedy Coordinator informed him that his appeal was denied because it was untimely, as any appeal had to be received within "20 days of the event complained about." [Pet's Ex. D, ECF No. 4-1 at 14].

not to have a staff representative present or to call any witnesses. [Resp's Ex. 1, Att. E, ECF No. 10-6 at 2].

The DHO conducted the hearing on October 31, 2011. [Resp's Ex. 1, Att. G, ECF No. 10-8 at 2-4]. Petitioner denied the charges in the Incident Report and stated "that the weapon in question was not his and somebody set him up. He stated he has no idea how the weapon got into his cell." [Id. at 2]. Petitioner did not present any documentary evidence. [Id.]

The DHO considered the following evidence: (1) the shank itself; (2) a copy of the drop note recovered by the reporting officer; and, (3) a memorandum dated September 22, 2011, drafted by the correctional officer that located the shank when conducting a search of Petitioner's cell. [Id. at 3. See also Resp's Ex. 1, Att. H, ECF No. 10-9 at 2; Resp's Ex. 1, Att. I, ECF No. 10-10 at 2]. He determined that Petitioner committed the prohibited act of Possession, Manufacture or Introduction of a Weapon. [Id. at 4]. The DHO "gave little weight to [Petitioner's] defense that [he] was set up or that the weapon belonged to [his] cell-mate." [Id.] The DHO further explained that under the BOP's "constructive possession" policy, Petitioner was responsible for contraband found in his cell. That policy is set forth in Program Statement 5270.09, App. C at 40, § 4, and it mandates that it is an inmate's responsibility to keep his areas free of contraband. The DHO stated that he:

> gave greater weight to the written statement of Officer McKinney in which he documents while searching your assigned cell, he discovered a homemade weapon under the upper mattress. The area under the mattresses is considered a common area of the cell as all occupants of the cell would have access to that area. Your assigned cell is an area that is under your control. You are responsible to keep all areas under your control free from contraband. You are responsible for all contraband found in your assigned cell.

[Id.]

The DHO imposed the following sanctions: (1) disallowance of 40 days good conduct time; and (2) 15 days of disciplinary segregation. He also explained:

3

> Possession of a weapon seriously disrupts the security and orderly running of the institution. The possession of a sharpened instrument threatens the safety of both inmates and staff. A sharpened instrument could be used as a weapon to inflict serious or lethal injury on another person. The possession of a weapon cannot be tolerated, because to do so would lessen staff's ability to maintain the security and good order of the institution. These sanctions were imposed to maintain the security and good order of the institution. These sanctions were imposed to punish you for your misconduct, to place a significant impact on your future behavior, and to deter inmates from manufacturing and possessing weapons within a corrections institution.

[Id.]

> On February 2, 2012, the Regional Director denied Petitioner's appeal of the DHO's decision:
>
> Program Statement 5270.09, <u>Inmate Discipline</u>, states it is an inmate's responsibility to keep his or her area free of contraband. Although you were not in the cell when the weapon was found, the record reflects that you were assigned to that particular cell. You are responsible for all items in your cell. It was reasonable for the DHO to find you committed the prohibited act.
>
> Your contention [that] the investigation was inadequate is not credible. A review of the record reveals you requested the investigator review video of your cell. Video was not used a[s] evidence in this case. The evidence relied upon was the eyewitness account of the reporting officer that a weapon was found in your assigned cell.
>
> The record in this case reflects substantial compliance with Program Statement 5270.09, <u>Inmate Discipline</u>. The decision of the DHO was based upon the greater weight of the evidence and the sanctions imposed were consistent with the severity level of the prohibited act.

[Resp's Ex. 1, Att. K, ECF No. 10-12 at 3].

Petitioner filed an appeal to the BOP's General Counsel. In support, he submitted a memorandum prepared by Correctional Counselor R.S. Smith, who vouched for Petitioner's good character and expressed his belief that Petitioner "was wrongfully accused, punished, and sanctioned for a shank found under his cellmate's mattress[.]" [Pet's Ex. K, ECF No. 4-1 at 37]. In addition, Smith's memorandum also appears to establish that there was no video surveillance footage. Smith explained that in an effort to assist Petitioner's case: " I … pulled [the video surveillance] tapes to see if anyone went into his cell. At that time I saw the camera pointing in the direction of his cell was not functioning." [Id. at 38]. In a

4

subsequent memorandum, Smith wrote: "I went to SIS and pulled tapes to see if anyone had entered his cell and learned the camera pointing in the direction of the cell was not functioning." [Pet's Ex. L, ECF No. 4-1 at 40].

On October 24, 2012, Harrell Watts, Administrator, National Inmate Appeals, denied Petitioner's appeal. He stated that the Regional Director adequately addressed Petitioner's concerns. Watts further explained that Smith's memorandum:

> reinforces evidence relied on by the DHO that is detailed in Section V of the DHO report. As far as the video camera is concerned, no video evidence was considered, nor required to be considered, by the DHO. The DHO relied upon the statement of the reporting officer. The DHO considered your statement during the hearing that the weapon did not belong to you, that the weapon was found under the top mattress and not the bottom bed where you slept, and determined the greater weight of the evidence supported the conclusion you committed the prohibited act. Program Statement 5270.09 provides that inmates are responsible to keep their area free of contraband. The "area" underneath the mattress is considered common area of your assigned cell. The contraband was found in an area of your assigned cell to which you had access. Accordingly, it is appropriate to support the charge as stated.

[Resp's Ex. 1, Att. J, ECF No. 10-11 at 2].

Thereafter, Petitioner commenced habeas proceedings in this Court by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [ECF No. 4], in which he contends that his due process rights were violated during the disciplinary proceeding. Respondent has filed his Answer [ECF No. 10], in which he contends that the petition should be denied on the merits.

**B.** **Subject Matter Jurisdiction**

This Court has jurisdiction under 28 U.S.C. § 2241, which "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the *execution of his sentence*." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010) (emphasis added) (quoting Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001) and citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir.

5

2005)). In McGee, the Third Circuit Court instructed that "the question to be asked is whether granting the petition would 'necessarily imply' a change to the fact, duration, or execution of the petitioner's sentence." 627 F.3d at 936. In another case, it held that "[a] challenge, such as this one, to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to § 2241, as the action could affect the duration of the petitioner's sentence." Queen v. Miner, 530 F.3d 253, 254 (3d Cir. 2008) (per curiam) (citations omitted).

**C.    Discussion**

This Court's analysis of Petitioner's due process claim must begin with the Supreme Court's decision in Wolff v. McDonnell, 418 U.S. 539 (1974), which is the seminal case concerning the due process rights of federal prisoners during disciplinary proceedings. In that case, the Supreme Court noted that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. Wolff, 418 U.S. at 556-57. However, the Supreme Court noted further that this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. Id. Instead, a prisoner is entitled only to procedures sufficient to ensure that the protected interest (i.e., good time credit) "is not arbitrarily abrogated." Id. at 557.

In Wolff, the Supreme Court enumerated several procedural safeguards that are required in a prison disciplinary proceeding. The only one at issue in this case is the requirement that the inmate be given an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals. Id. at 563-72. The BOP also has established regulations that set forth the procedures for disciplinary actions. These regulations track the

6

requirements set forth in Wolff, and in some respects exceed the required process set forth in that case. In relevant part, the BOP's regulations provide:

> **Discipline Hearing Officer (DHO) hearing.**
> - - -
> **(f)** Evidence and witnesses. You are entitled to make a statement and **present documentary evidence** to the DHO on your own behalf. The DHO will consider all evidence presented during the hearing. The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.

28 C.F.R. § 541.8(f).

Also relevant to this case is the Supreme Court's decision in Superintendent v. Hill, 472 U.S. 445 (1985), which held that "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary [officer] are supported by some evidence in the record." 472 U.S. at 454 (internal quotation marks and citation omitted). The Hill standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. Brown v. Recktenwald, — F.App'x —, 2013 WL 6439653, *1 (3d Cir. Dec. 10, 2013) (citing Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989)). The relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. (quoting Hill, 472 U.S. at 455-56). The United States Court of Appeals for the Third Circuit has explained that "the 'some evidence' standard is a standard of appellate review to be applied by the district court rather than a burden of proof in a prison disciplinary proceeding." Denny v. Schultz, 708 F.3d 140, 144 (3d Cir. 2013) (citing Brown v. Fauver, 819 F.2d 395, 399 n.4 (3d Cir. 1987)).

Petitioner argues that his due process rights were violated because alleged "exculpatory" evidence was not made available to him at the DHO hearing. The "exculpatory" evidence that he cites is "camera footage" and Correctional Counselor Smith's belief that Petitioner was wrongly sanctioned.

7

[ECF No. 4 at 8]. Petitioner's argument has no merit for several reasons. First, under the BOP's constructive possession policy, Petitioner is responsible for keeping his area free from contraband. Program Statement 5270.09, App. C at 40, § 4. Therefore, he could be sanctioned because the shank was found in his cell even if it belonged to his cellmate and he did not know that it was there. Second, Correction Counselor Smith's memorandum, which Petitioner submitted to this Court, indicates that surveillance camera pointing in the direction of Petitioner's cell was not functioning. [Pet's Exs. K & L, ECF No. 4-1 at 37-40]. Thus, it appears that there was no "camera footage." Third, even if there had been available surveillance footage, Petitioner had no right granted to him by either the Due Process Clause or the BOP regulations or policies to use it at his DHO hearing. As Respondent notes, inmates have the right to present *documentary* evidence, not video evidence, at their DHO hearings. Finally, Correction Counselor Smith's subjective belief that Petitioner "was wrongfully accused, punished, and sanctioned" for the shank found in cell is totally irrelevant. He was not a witness.

In actuality, Petitioner's real complaint is with the BOP's constructive possession policy itself. This challenge must fail. In Denny v. Schultz, 708 F.3d 140 (3d Cir. 2013), the United States Court of Appeals for the Third Circuit upheld the BOP's application of the constructive possession policy in the context of prison disciplinary proceedings. In Denny, two shanks were discovered in the duct work above the sink between the petitioner's cell, which he shared with one other inmate, and an adjacent cell. The Court of Appeals affirmed the denial of the petitioner's habeas petition, holding:

> Courts that have considered this question have uniformly held that the discovery of contraband in a shared cell constitutes "some evidence" of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits. The Seventh Circuit, applying a probability-based approach, held that a twenty-five percent probability that contraband found in a four-person cell belonged to one of the inmates constituted "some evidence." See Hamilton v. O'Leary, 976 F.2d 341, 345-46 (7th Cir. 1992) ( "The proposition that constructive possession provides 'some evidence' of guilt when contraband is found where only a few inmates have access is unproblematical."). More

8

> recently, the Eighth Circuit concluded that discovery of two homemade weapons found above the entry door to the common area of an eight-person cell constituted "some evidence" of possession. See Flowers v. Anderson, 661 F.3d 977, 980-81 (8th Cir. 2011) (relying on a collective responsibility theory whereby each inmate is collectively culpable for contraband found in a shared area).
>
> - - -
>
> The application of collective responsibility in the prison context has its foundation in BOP Program Statement 5270.07 [now Program Statement 5720.09], Inmate Discipline and Special Housing Units, which provides that it is an inmate's responsibility to keep his or her area free of contraband. … Although the BOP Program Statement does not define the term "area," a prisoner's area at a minimum includes the prisoner's cell as well as any other space accessible from within the cell. In a shared cell, all parts of the cell are equally accessible to each prisoner housed in the cell. Thus, each individual prisoner is responsible for keeping the entire cell free from contraband. Because each prisoner in a shared cell has an affirmative responsibility to keep the entire cell, and all other space accessible from within the cell, free from contraband, it follows that any contraband found within the cell is constructively possessed by each of the inmates housed in that cell. Thus, the mere discovery of contraband in a shared cell constitutes "some evidence" that each prisoner in that cell possessed the contraband.
>
> - - -
>
> In the case before us, it is undisputed that two homemade shanks were found in a space accessible from within Denny's cell. This evidence, by itself, constitutes "some evidence" that Denny possessed the weapons in question. Furthermore, and as noted herein, both the Seventh and Eighth Circuits have held inmates responsible for possession of contraband under circumstances similar to those present here. We see no reason to diverge from these courts. It follows that the DHO did not violate Denny's due process rights when it found that he had committed the prohibited act of "Possession of a Weapon," in violation of BOP Code 104, and sanctioned him with the forfeiture of forty days good time credit.

Denny, 708 F.3d at 147. The decision in Denny forecloses any argument that Petitioner has that there was not "some evidence" to support the DHO's conclusion since the shank was found in his "area."

Based upon all of the forgoing, Petitioner has failed to establish that he was denied any process due to him under the Due Process Clause or applicable BOP regulations and policies. He also has failed to establish that he was denied due process because there was insufficient evidence to support the DHO's findings. Accordingly, his petition is denied for lack of merit.

9

D. **Certificate of Appealability**

28 U.S.C. § 2253 codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B). As such, this Court makes no certificate of appealability determination in this matter.

## II.

For the foregoing reasons, the petition for a writ of habeas corpus will be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DERRICK M. SYLVIA,** | ) | |
| Petitioner, | ) | Civil Action No. 12-299 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| **BOBBY L. MEEKS,** | ) | |
| Respondent. | ) | |

## ORDER

AND NOW, this 20th day of March, 2014;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED. The Clerk of Courts is hereby directed to close this case.


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge


cc:   Notice by ECF to counsel of record and by U.S. mail to Petitioner at his address of record